IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALD ANTHONY MANNO           *
                Plaintiff
       v.                      *   CIVIL ACTION NO. AMD-07-1477

MELAKU AYALEW, M.D.            *
CMS, INC.
GARY MAYNARD
                Defendants     *

MEMORANDUM

Ronald Anthony Manno ("Manno"), a Maryland Department of Public Safety and Correctional Services ("DPSCS") inmate confined at the Maryland Correctional Institution in Jessup ("MCIJ"), filed a "petition for ex parte order and for emergency injunctive relief" seeking transfer to the medical tier of the Jessup Correctional Institution. Paper No. 1. Manno is a dialysis patient. He was housed on the Maryland House of Correction ("MHC") medical tier, with handicap accommodations (single cell with private shower with safety bars), from May 2001 to March 10, 2007. According to Manno, when MHC was closed in March 2007, he was transferred to MCIJ, which has no medical tier and no medical/handicapped accommodations whatsoever.[1] *Id*. Manno alleges that after two months at MCIJ, he saw his health deteriorate from "fairly healthy" to a "veritable invalid." *Id*.

The petition was construed as a 42 U.S.C. § 1983 complaint for injunctive relief and because the matter involved both housing and medical issues.[2] On July 9, 2007, defendants' responses to the

---

[1] Manno alleges that: he has fallen several times and sustained injury; he has become partially paralyzed as a result of allergic reactions to dialysis; he is on crutches and can barely walk; he has no stamina to walk to the MCIJ cafeteria and has been compelled to miss 2 out of 3 meals; and medical staff at MCIJ refuse to sign an order authorizing him to be served meals on the tier because he has been classified to general population. Paper No. 1.

[2] Correctional Medical Services, Inc. ("CMS") is the private health care contractor handling the medical and records contract modules for the DPSCS facilities. Counsel has represented CMS and its contractual employees in prior prisoner civil rights cases.

court's order to show cause were received.[3]  Paper Nos. 4 & 5. Pursuant to court's order, the Clerk issued notice to Manno that the responses were being construed as motions for summary judgment, that he was entitled to file materials in opposition, and that his failure to file materials or to show a genuine dispute of material fact could result in the dismissal of his case.  Paper No.  7. Manno has filed an affidavit, an opposition, a cross-motion for summary judgment, and a motion for emergency injunctive relief.  Paper Nos. 10 & 12-14.  The case may be determined without oral hearing.  *See Local Rule* 105.6. (D. Md. Aug. 2004).  For reasons to follow, the complaint shall be dismissed.

The material facts are undisputed. Manno is 68, with a history of end-stage renal disease; he is treated with hemodialysis three times a week. He also suffers from gastroesophageal reflux disease and hypertension.  He was transferred to MCIJ on March 10, 2007, and evaluated by Dr. Ayalew on March 13, 2007, for his complaints of a "sticking" sensation in his throat.  Manno was scheduled for a gastroenterology consultation.

Manno filed sick-call requests in April 2007, complaining of incessant coughing and difficulty swallowing, severe numbness in the tips of his fingers on both hands which was aggravated by his cold cell, sudden weakness in his left knee joint; having an allergic reaction during his hemodialysis, shortness of breath, and no strength in his legs.  *Id*.  He was evaluated by Dr. Ayalew, whose examination revealed that Manno had a scaly papular rash on his back and mid-abdominal area and his hands were hyperemic (reddened).  Dr. Ayalew found that Manno did not appear to be in any distress and ordered Allegra for Manno's allergic reactions and Vitamin A & D ointment for the scaly rash. Manno was to be reassessed in one week.

---

[3] Manno's amended complaint was received for filing on July 10, 2007, one day after the show cause responses were received. Paper No. 8. He seeks transport to University of Maryland Hospital for a neurological consult and again seeks transfer to the JCI medical tier, claiming that Dr. Atnafu has misdiagnosed him, is not a specialist, and refused to prescribe Nepro for his dialysis because of its expense. *Id*. He further complains that all meals provided at the hospital are served in small, cold portions. *Id*.

On May 1, 2007, Manno filed sick-call requests complaining he fell down steps after his left leg buckled and he had extreme weakness in his legs. He also claimed that he had numbness and swelling in both hands after an allergic reaction to the hemodialysis. He was evaluated by Physician's Assistant ("PA") Bogucki whose examination revealed tenderness upon palpation of the posterior surgical area with no radiculopathy, weakness of both knees, tenderness to palpation of the right ankle joint with edema and decreased range of motion, and no neurovascular deficit. Bogucki ordered x-rays of Manno's cervical spine and right ankle and a bottom bunk, wrapped Manno's ankle in an ACE wrap for stability and to reduce swelling, and ordered Naprosyn, a non-steroidal anti-inflammatory medication, for pain and swelling. On May 9, 2007, Manno had x-rays taken which revealed no evidence of fracture or subluxation, minimal degenerative joint disease ("DJD"), and spurs along the margin of the lower cervical spine. The right ankle x-ray showed no signs of fracture or dislocation.

Manno filed additional sick-call requests on May 20, 2007, complaining of overall weakness, partial paralysis in his fingers, and pain across his neck and shoulders. He was examined by Bogucki two days later and assessed with minimal DJD of the cervical spine and a right ankle sprain. He was prescribed Tylenol. Another sick-call request, dated June 2, 2007, was submitted complaining of pain in the lower back and left hip as a result of falling in the shower on May 7, 2007. When evaluated on June 15, 2007, however, Manno indicated that the pain was not related to a fall in the shower. Bogucki's evaluation revealed the same signs and symptoms as earlier examinations, along with tenderness to palpation in the lumbar spine area with weakness of both thighs. Bogucki recommended transferring Manno to the infirmary in the Jessup Regional Hospital ("JRH"). Manno was transferred that same day. He was examined by Dr.Atnafu who concluded that Manno may have myopathy or polymyalgia rheumatica. Blood tests were ordered, along with a rheumatology consultation and a therapeutic trial of Sinemet, due to Atnafu's concerns that Manno may have Parkinson's disease.

The results of Manno's blood tests were normal. Further, the Sinemet did not appear to help Manno's symptoms. Consequently, Atnafu discontinued the rheumatology consultation and ordered a neurology consultation instead. That consult will be scheduled for the next appointment at Johns Hopkins Hospital. Atnafu has also ordered physical therapy for Manno. Healthcare staff state that in the interim plaintiff is ambulating well using a crutch and is able to form a good fist and is able to write using a small pen. Atnafu believes Manno's condition is improved, but Manno denies feeling better and continues to complain of muscle weakness.

Manno requested a transfer to JCI and asked that he be allowed to be fed on the tier. He is, however, no longer housed in an institution or area where he would have to walk to the dining hall.

Manno complains that JRH is like a "concentration camp" in that it has no commissary for writing materials or stamps and no access to a copy machine. He claims that he does not have a history of hypertension and that medical staff have provided misleading and false information regarding his discomfort. Manno contends that Dr. Atnafu's approach to his medical problems involves "guess work" and "trial and error." He further states that he is to stay at JRH pending the rescheduling of a neurology appointment and that he is to return to JCI population with recommendation for handicapped accommodations, lower bunk status, and meals on the tier. Manno complains, however, that there is no recommendation for single-cell status.

The record reflects that Manno has been evaluated and treated for his complaints. He was housed in a hospital setting, giving him 24-hour access to aids for the handicapped. Further, he has been ordered physical therapy and has been referred to Johns Hopkins Hospital for a neurology evaluation. He has failed to demonstrate that his circumstances warrant injunctive relief.[4] The case shall be dismissed without prejudice. Counsel for CMS shall, however, be required to provide a

---

[4] Manno has failed to demonstrate that he will be irreparably harmed if injunctive relief is denied. *See Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 195-96 (4th Cir. 1977); *see also Direx Israel, Ltd. v. Breakthrough Medical Corporation*, 952 F.2d 802, 812 (4th Cir. 1992.); *Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983).

status report updating the court as to Manno's medication pain regimen, along with his neurology and surgical consultations and evaluations, the first report to be filed by January 21, 2008.[5] A separate Order follows.[6]

Date: December 20, 2007  \_\_/s/_____
                         Andre M. Davis
                         United States District Judge

---

[5] In his recent request Manno claims that surgery, recommended by a hospital physician on November 21, 2007, has been delayed. Paper No. 14.

[6] Manno's motion for summary judgment and motion for injunctive relief shall be denied.